Mr,. Justice Livingston
 

 delivered the opinion of the Court.
 

 This is a libel under the 67th section of the collection law, passed the 2d of March, 1799.
 

 This section provides, that it shall be lawful for the collector, naval officer, or other officers of the customs, after entry made of any goods, wares, or merchandize, on suspicion of fraud, to open and exa-‘ mine, in the presence of two or more reputable merchants, any package or packages thereof, and if, upon examination, they shall be found to- agree with
 
 *522
 
 the entries, the officer making such seizure and examination, shall cause the same to be repacked, and delivered to the owner or claimant forthwith ; and the expense of such examination shall be paid by the said collector or other officer, and allowed in the settlement of their accounts : but if any of the packages so examined, shall be found to differ in.their. contents from the entry* then the goods, wares or merchandize contained in such package or packages, shall be forfeited : Provided, that the said forfeiture shall not be incurred, if it shall be made appear to the satisfaction of the collector and naval officer of the district where the same shall happen, if there be a naval officer, and if there be no naval officer, to the satisfaction of the Collector or of the Court in which a prosecution for the forfeiture shall be had, that such difference arose from accident or mistake, and not from an intention to defraud the revenue
 

 These goods being claimed by Hugh K. Toler, of the City of New-York,- merchant, were condemned by the District Court of the United States, for the Southern District, of New-York, which sentence being reversed by the Circuit Court for that district, an appeal from the last sentence has been taken to this Court.
 

 Before"we examine the facts of the case, or whether they establish a fraud, without which the prosecution under this section cannot be sustained, it will be necessary to dispose of. a question of law, which has beeamade by the counsel for the. claimant.
 

 Jt is ..conceded on all. hands, that on the 3d of November, 1810, the six packages which are, libelled
 
 *523
 
 were entered at the cusíoiB-hoúse by Thomas Ash, on behalf of the claimant, and that the entry covered only a part of the goods which the packages contained. That two days after, Toler himself completed the entry of the resid 3 of the goods which were in these packages, and which had not been previously entered by Ash. Several days after, the packages were opeped and examined by
 
 the
 
 collector, in presence of two merchants, and their contents were found not to differ, but' to agree with the two entries taken together; but to differ very materially from the first entry made by Ásh
 
 ;
 
 upon -which the collector, made a seizure of them. On these facts, about which there is no dispute, it is" denied that the collector had any right to seize, inasmuch, as, wheia the inspection took place, there was no difference between the goods found ip the packages, and those mentioned in the invoices. It is said, that the collector, if he suspected a fraud, ought to have made a seizure before the second entry, in which case the difference which would have existed between the goods on which a duty was secured, and those in the packages, would have justified such an act, but that by waiting until a second entry was made, the fraud, if any committed, was purged. In support of this position, it is said, thatthe collection law provides for a post entry of this kind, and that the very path which is taken when an entry is made, imposes on the party who mlikes it, the duty, in case he shall af-terwards discover any other goods in a package than those first entered by him, of immediately informing the collector, and making a further entry thereof.
 

 
 *524
 
 This provision, and the form of the oath, suppose no more than-that a deficient or defective entry may . . , be made .innocently, and under a mistake, without any certain knowledge at the time, of the contents of the packages entt re '. For, if the party making an entry, knows at the time of other goods, such other goods 0000,t be entered afterwards, and the oath usual on such Occasions cannot be taken, without admitting that a perjury had been committed at the time of the first entry. The Court is, therefore, of opinion, that, although the seizure was not made until after the second entry, the collector had a right to seize for any variance between the contents of the packages, and the first, entry, and that such seizure will be valid, and must be followed by sentence of condemnation, unless it shall turn out that such difference. proceeded from accident or mistake, and not from an intention to defraud the revenue. Whether the case of the claimant be. entitled to this favourable interpretation, the Court will now proceed to inquire.
 

 A great deal, of testimony, which was not produced in the Circuit. Court, and which might easily have been, (ás all the witnesses resided in the City of New-York,) has been taken since the appeal ; and it is on this testimony, as well as on that which; was there, taken, that the sentence of that Court must now be reviewed.
 

 It is in proof, and indeed' admitted by the claimant, that a very imperfect entry of the goods contained in these packages, was made on' Saturday, the third day of November, 1810, by Thomas Ash, who had been employed by Toler to enter the same , and that
 
 *525
 
 the residence of the goods-therein contained was not entered by the claimant, until the fifth dav of the samé month. - To escape from the consequences of the first entries not being complete, and to repel the imputation of its originating in fraud, the plaintiff has endeavoured to prove that the letter covering the invoices of the goods contained in the second entry, was not received by him when the first entry was made. To establish this fact, his clerk, Mr.. Crane, has been examined as a witness, and admitting that he b.as told the truth, there would be some reason to believe, that such were the fact; but there are many circumstances which now appear in this cause, which compel us to withhold from Mr. Crane the credit which might otherwise.be due to him. Tbeusqal course of business, as testified to by several very respectable, merchants, stand opposed to his relation,, that invoices of only -part of ihq goods contained, in those packages, were enclosed in a letter to. H. K. Toler, & Co., and invoices of the other goods in- a letter to J. K. Jaffray, which had been forwarded to that gentleman at Albany. It appears from all the. testimony, that if a package, consigned to one person, contain goods belonging to different persons, it is customary, and some of the witnesses say indispensable, to send to the consignee of the package, invoices of all the goods which it containsj or to refer, in the main invoice of the consignee, to the invoice of the other goods ; and that the .withholding such invoices or.information, would, .be considered as strong evidence of an intention to defraud the revenue. Another circumstance which
 
 *526
 
 detracts much from the credit of this witness, is, that it js more than probable, that at the time of this con- . r . signment, a copartnership subsisted between the claimant and the Jaffrays of London. This appears not only from an advertisement of a dissolution of such-copartnership, which has been published since the decree of the. Circuit Court, in one of the New-Yqrk papers, but from-other testimony in the cause, and from no contrary proof being furnished by Mr. Toler. Now, if such partnership really existed, which cannot well be disbelieved, it is most extra-culinary indeed, that all the invoices of the goods in that, package should not have been sent to the partner residing permanently in the city of New-York, but that an“invoice of part of them should be transmitted, to him, and of another, and of the most valuable part, to a partner who might or might not have reached this country when the Isabella arrived. If merchants, who must be presumed to know how to manage their business, will act in a manner so contrary, to. the general practice of commercial men, they must expect, and cannot complain, if such, deviation from established usage create suspicions unfavoura-ble to the integrity of the particular transaction. It would have added something to the value of the testimony of Mr. Crane, if the name of the'-merchant at Albany, to whose care the letter for.Mr. Jaffray had been transmitted,..Or if the letter itself, with'the post-jnárks, had been prqduced. The importance of the testimony of Mr. Ash,,as,delivered before the Circuit Court, Is much 'weakened by that of Judge Van
 
 *527
 
 NesSj who has also been examined since the appeal; for, instead of being simply told at the custom house, when he asked for a permit, that he must, call again, it appears he stated, on his examination in the District Court, that when he applied for a permit on the 3d of November; he was told at the custom house, thatthey wished to examine the goods before they •were deliveredand that although he did not see Mr. Toler until Monday, he communicated to his clerk, Mr. Crane, what had passed, who doubtless gave the same', information to his principal; which Will account for the solicitude, which'he discovered so early on Monday morning to enter the goods which had been omitted in the entry of. Mr. Ash. There are other, circumstances in this case, that are not here noticed, which render the explanation given by Mr. Toler,^to say the least, extremely questionable.
 

 The Court cannot dismiss this cause without expressing its surprise,, that'more than ten years'have elapsed sincé the filing of the libel in the District Court. As all the witnesses who have been examined since the appeal, reside in the city in which the cause was tried, they might, and ought, to have been examined in that1 Court,; and it their testimony had there been reduced to writing, and used in. the Circuit Court, a final decision, might have been had many years ago, and before the insolvencies which it is suggested have happened, and have rendered the further prosecution of these proceedings of little or no. importance to the patties.
 

 
 *528
 
 The decree of the Circuit Court is revoked, and the sentence of condemnation pronounced by the District Court affirmed.